FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 16 2020 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOSE MELENDEZ, individually and on behalf of
all others similarly situated,

                          Plaintiffs,

  -against-

ONE BRANDS, LLC,

                         Defendant.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
18-CV-06650 (CBA) (SJB)

**AMON, United States District Judge:**

Plaintiff Jose Melendez brings a putative class action on behalf of himself and a class of similarly situated New York consumers ("Melendez") against defendant ONE Brands, LLC ("ONE Brands") asserting six causes of action. At oral argument, Melendez conceded, through counsel, that he did not allege facts sufficient to state a claim for fraud or for negligent misrepresentation; he further conceded that granting him leave to amend these two claims would be futile. Accordingly, the Court considers only Melendez's four remaining claims: (1) violation of New York General Business Law ("NYGBL") §§ 349 and 350, (2) breach of express warranty, (3) breach of the implied warranty of merchantability, and (4) unjust enrichment.[1] (D.E. # 16 ("Am. Compl.").) ONE Brands moves to dismiss Melendez's First Amended Complaint ("FAC") in its entirety and with prejudice. (D.E. # 21; D.E. # 22 ("Def. Mem.").) For the reasons that follow, ONE Brands's motion is granted in its entirety.

---

[1] Melendez, a citizen of New York, brings his claims along with "John and Jane Doe plaintiffs," who are "citizens of the other 49 states." (Am. Compl. ¶¶ 31–35.) These John and Jane Doe plaintiffs represent subclasses of the "49 other states where they reside and purchased the Products," and they assert causes of action under the consumer protection statutes of all 50 states. (Id. ¶¶ 51–53.) For reasons discussed at greater length herein, the Court addresses only Melendez's New York causes of action and does not address the allegations involving other states' consumer protection laws.

1

## BACKGROUND

Melendez brings this action in connection with ONE Brands's production, distribution, labeling, marketing, and sale of nutrition bars under its "ONE Bar" and "ONE Basix" lines ("ONE Bars"). The following facts are drawn from Melendez's FAC and are assumed true for purposes of this motion.

ONE Brands sells over a dozen varieties of nutrition bars. (Am. Compl. ¶¶ 1–4.)[2] It sells its bars to consumers via third-party retailers, including brick-and-mortar stores and online retailers, and directly from ONE Brands's website. (Id. ¶¶ 1, 4.) The front label of the ONE Bars' wrappers contains the brand name "ONE," which refers to the bars' one gram of sugar. (Id. ¶ 5.) The phrases "1g sugar" and "20g protein" also appear on the front label of the bars' wrappers. (Id.)

The FAC alleges that these representations are both false and misleading. Specifically, the FAC alleges that independent laboratory testing has determined that samples of these bars actually contain 5.2 grams of sugar per 60-gram bar, rather than the advertised 1 gram of sugar per bar. (Id. ¶¶ 11–12.) Further, this testing is consistent with "other credible reports" of the ONE Bars' actual sugar content that have been relied upon by plaintiffs in a similar pending action against ONE Brands, Hackman v. ONE Brands, LLC, No. 2018-CA-005423 (D.C. Super. Ct.).[3] (Id. ¶ 14.) Moreover, when consumers see the bars' front labels that "highlight the 1 gram of sugar," which is "understood by consumers to indicate [that the bars] are 'low sugar,'" (id. ¶ 16), they "reasonably believe that the [bars] are lower in calories and carbohydrates than they are," (id. ¶

---

[2] The first paragraph of the FAC in fact refers to "toaster pastries," rather than to nutrition bars; however, the reference to toaster pastries appears to be a mistake.
[3] On June 18, 2019 the Superior Court denied ONE Brands's motion to dismiss in Hackman. That decision is attached to ONE Brands's Memorandum as Exhibit A. (See Def. Mem.) The Superior Court's order denying ONE Brands's motion for reconsideration or, in the alternative, interlocutory appeal of that decision, is attached to ONE Brands's Notice of Supplemental Authority as Exhibit A. (See D.E. # 27-1.)

21; see also id. ¶ 54 ("Plaintiff reasonably believed based on [ONE Brands's] representations that the [ONE Bars] contained a lower amount of carbohydrates than they did, owing to the front-of-package emphasis on the sugar grams and the comparison of the sugar . . . to protein . . . .")). These statements are "particularly relevant" to consumers who are diabetic or pre-diabetic, are seeking to abide by dietary restrictions that emphasize low carbohydrate consumption, and/or are following the "keto-genic" or "paleo" diets. (Id. ¶ 6.)

As a result of this false and misleading labeling and advertising, these bars are sold at a "premium" price of "no less than $3.99 per bar, excluding tax," compared to other similar products that are labeled and marketed in a non-misleading way. (Id. ¶ 25.) Melendez purchased one or more of the bars for no less than this price, in the Eastern District of New York or elsewhere in New York. (Id. ¶ 37.) He paid this premium because he saw and relied on ONE Brands's misleading representations prior to his purchase. (Id. ¶ 39.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a plaintiff must state a claim that is "plausible on its face" by alleging sufficient facts for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although the Court will not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action," id., it must accept as true all material factual allegations alleged in the complaint and draw all reasonable inferences in plaintiffs' favor, see Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013).

## DISCUSSION

Melendez brings this action pursuant to 28 U.S.C. § 1332(d), which provides district courts with original jurisdiction over civil class actions in which the amount in controversy exceeds $5,000,000 and in which any member of the class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). Here, Melendez alleges that the aggregate amount in controversy is more than $5,000,000, (Am. Compl. ¶ 27); Melendez is a citizen of New York and seeks to represent a class of similarly situated consumers, (id. ¶¶ 31, 41–50); and ONE Brands is a Delaware limited liability company with its principal place of business in North Carolina, and its members are not New York citizens, (id. ¶ 36).

ONE Brands's arguments for dismissal fall into three categories: (1) Melendez lacks standing to pursue non–New York causes of action; (2) Melendez's claims—all of which are state-law claims—are preempted by federal law; and (3) Melendez fails to state a claim for each of his causes of action.[4] Each of these arguments is addressed in turn.

### I. Standing

Melendez, a citizen of New York, brings his claims along with "John and Jane Doe plaintiffs," who are "citizens of the other 49 states." (Am. Compl. ¶¶ 31–35.) These John and Jane Doe plaintiffs are alleged to represent subclasses of the "49 other states where they reside and purchased the Products," and they assert causes of action under the consumer protection statutes of all 50 states. (Id. ¶¶ 51–53.)

In order to pursue a claim in federal court, an actual plaintiff must allege, inter alia, that he was actually injured. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). To proceed on a class-

---

[4] ONE Brands also argues that Melendez lacks standing to pursue injunctive relief. Because the Court concludes that Melendez's claims must be dismissed on other grounds and that granting him leave to amend would be futile, the Court need not reach the parties' arguments regarding whether Melendez has standing to pursue injunctive relief with respect to any of these claims.

wide basis, an individual plaintiff must allege that he is a member of the asserted class. See id. at 1547 n.6; see also Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 217 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents.").

Here, no plaintiff satisfies these requirements with respect to the non–New York subclasses. More specifically, other than Melendez from New York, the FAC lists no named plaintiff(s) from the other 49 states. The FAC also provides "no basis to conclude that either John or Jane Doe are actual people whom Plaintiff[] ha[s] elected to name anonymously." Stoltz v. Fage Dairy Processing Indus., S.A., 2015 WL 5579872, at *12 (E.D.N.Y. Sept. 22, 2015). Indeed, the FAC states that the "true identities" of the John and Jane Doe plaintiffs "are not fully known," and that "[t]he allegations as related to laws of other states serves as a placeholder upon joinder or amendment." (Am. Compl. ¶¶ 33, 35.) Allegations made on behalf of individuals whom Melendez hopes will join the lawsuit are insufficient to establish standing. Consequently, the John and Jane Doe claims asserted on behalf of the 49 non–New York subclasses are dismissed. The only claims at issue in this case are therefore the New York claims.

## II. Federal Preemption

Melendez's New York claims are for (1) breach of express warranty, (2) breach of implied warranty, (3) unjust enrichment, and (4) violations of NYGBL §§ 349 and 350. Melendez in turn brings his NYGBL claims under the following three theories: (i) the "1g sugar" statement on the front label of the ONE Bars is false, as independent laboratory testing determined that samples of these bars actually contain 5.2 grams of sugar per 60-gram bar, rather than one gram of sugar per bar (the "Falsity Theory"); (ii) regardless of whether ONE Brands's "1g sugar" statement is false,

5

the statement is still misleading because it misleads reasonable consumers into believing that the bars are lower in calories and/or carbohydrates than they actually are (the "Misleading Theory"); and (iii) using "ONE" as part of ONE Brands's brand name to refer to the bars' purported one gram of sugar is false and/or misleading for the same reasons (the "Brand Name Theory").[5]

The Court considers here only whether the Falsity Theory and Brand Name Theory of Melendez's NYGBL claims are preempted by federal law since, for the reasons discussed in Parts III and IV, infra, Melendez's remaining claims and theories are dismissed for failure to state a claim and granting leave to amend them would be futile. For the reasons that follow, federal law preempts both the Falsity Theory and the Brand Name Theory.

### A. The Federal Regulatory Scheme

"The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343 et seq. ("FDCA"), was enacted in 1938 as a successor to the 1906 Pure Food and Drugs Act, 34 Stat. 768, repealed by Act of June 25, 1938, ch. 675, § 902(a), 52 Stat. 1059, which had been the first comprehensive federal legislation designed to protect consumers from fraud or misrepresentation in the sale of food and drugs." Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *2 (E.D.N.Y. July 21, 2010). "The FDCA empowers the Food and Drug Administration ("FDA") to (a) protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled,' 21 U.S.C. § 393(b)(2)(A); (b) promulgate regulations pursuant to this authority; and (c) enforce its regulations through administrative proceedings." Id. (citing 21 C.F.R. § 7.1 et seq.). Congress amended the FDCA in 1990 by enacting the Nutrition Labeling and Education Act (the

---

[5] Melendez also contends that ONE Brands's website contains several false and/or misleading representations regarding ONE Bars. (Am. Compl. ¶¶ 7–9.) However, as Melendez's counsel affirmed at oral argument, Melendez did not purchase ONE Bar(s) from ONE Brands's website, but rather from a third-party retailer. (Tr. 10:18–25.) Accordingly, the Court need not analyze the alleged website representations, given that no plaintiff with standing saw or relied on them.

"NLEA"), codified as amended at 21 U.S.C. §§ 301, 321, 337, 343, 371. "The NLEA was passed to 'clarify and to strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods.'" Nutritional Health All. v. Shalala, 144 F.3d 220, 223 (2d Cir. 1998) (citing H.R. Rep. No. 101-538, at 7 (1990)).

Significantly for the present purposes, the NLEA also added a preemption provision to Section 403A of the FDCA ("the preemption provision"). In relevant part, the preemption provision forbids states from imposing "any requirement respecting any [statement] of the type described in section 343(r)(1) . . . made in the label or labeling of food <u>that is not identical to the requirement of section 343(r) [of the FDCA]</u>." 21 U.S.C. § 343–1(a)(5).[6] Accordingly, state-law claims are preempted if they impose requirements regarding food labeling that are "not identical to" those imposed by the FDCA. See id; see also Ackerman, 2010 WL 2925955, at *6. State-law requirements are not "identical" to the FDCA if they "differ" from or are "not imposed" by federal law. 21 C.F.R. § 100.1(c)(4) ("'Not identical to' does not refer to the specific words in the [state-law] requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the [FDCA]; or (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the [FDCA].").

---

[6] The FDCA uses the term "claim" to refer to statements made in products' labeling. This Memorandum and Order refers to the statements made in products' labeling as "statements," rather than as "claims," so as to avoid confusing the statements made by ONE Brands in its labeling of ONE Bars with the legal claims brought by Melendez about these statements.

7

## B. Melendez's Falsity Theory is Preempted

Melendez alleges that the statement "1g sugar" on the front label of the ONE Bars is false, asserting that independent laboratory testing determined that samples of these bars actually contain 5.2 grams of sugar per 60-gram bar, rather than 1 gram of sugar per bar. (Am. Compl. ¶¶ 11–12.) ONE Brands counters that any such claim is preempted by federal law because Melendez has failed to allege that he tested the bars in accordance with the FDA's prescribed methodology. (Def. Mem. at 16–18 (citing 21 C.F.R. § 101.9(g)(2)).) More specifically, ONE Brands argues that federal law requires that testing be based on "12 subsamples" of the product, and "analyzed by appropriate methods as given in the 'Official Methods of Analysis of the AOAC International,' or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures." (Def. Mem. at 3–4 (quoting 21 C.F.R. § 101.9(g)(2)); see also Def. Reply at 4 (quoting 21 C.F.R. § 101.9(g)(2)).) In his opposition brief, Melendez does not argue that he did in fact use the FDA-prescribed testing methodology found in 21 C.F.R. § 101.9(g), but rather that he was not required to use this method in order to avoid preemption at the motion to dismiss stage. (Pl. Opp'n at 9–11.)

Both parties cite out-of-Circuit cases to support their respective positions, and there appears to be a split of authority on this issue. ONE Brands cites a number of federal court decisions from a range of districts that support its position. (See Def. Mem. at 16–18; Def. Reply at 3–7 (citing, inter alia, Baker v. NNW, LLC, Case No. 15–00222–CV–W–GAF, 2015 WL 12843827, at *4 (W.D. Mo. July 8, 2015) (dismissing as preempted complaint that failed to allege that testing followed the FDA's 12-sample procedure); Mee v. I A Nutrition, Inc., No. C–14–5006 MMC, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015) (dismissing as preempted protein content claims where complaint "pleaded facts demonstrating preemption" by attaching lab reports for

each of five products tested and reasoning that "where, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted"); Burke v. Weight Watchers Int'l, Inc., 983 F. Supp. 2d 478, 483 (D.N.J. 2013) (dismissing complaint as preempted because general allegation that testing was performed "in accordance to, and in compliance of, FDA guidelines" was "insufficient"); Welk v. Nutraceutical Corp., Case No.: 3:17-cv-02266-BEN-KSC, 2018 WL 3818033, at *4–5 (S.D. Cal. Aug. 10, 2018) (collecting cases); In re Whole Foods Mkt., Inc., 163 F. Supp. 3d 385, 392–93 (W.D. Tex. 2016) (same)).)

Melendez, for his part, cites two Northern District of Illinois cases and one Central District of California case. (Pl. Opp'n at 11 (citing In re Herbal Supplements Mktg. & Sales Practices Litig., No. 15-cv-5070, 2017 WL 2215025 at *12 (N.D. Ill. May 19, 2017) (accepting plaintiff's non-FDA-compliant testing at the motion to dismiss stage and noting that defendants are "free to challenge the efficacy of [the] testing later in the litigation"); Gubala v. CVS Pharmacy, Inc., No. 14 C 9039, 2016 WL 1019794, at *8 (N.D. Ill. Mar. 15, 2016) (holding that whether more detailed testing through discovery reveals that the nutrient-content claims are consistent with the plaintiff's laboratory results is more appropriately "an issue of proof, and Plaintiff does not need to prove his case at the pleading stage of the case"); Smith v. Allmax Nutrition, Inc., Case No. 1:15-cv-00744-SAB, 2015 WL 9434768, at *7 (E.D. Cal. Dec. 24, 2015) (holding that Plaintiff's non-FDA-compliant testing is merely intended to allow the Court to "infer that tests conducted in compliance with the [FDA's] 12-sample methodology would support Plaintiff's allegations that the Product is mislabeled.").) In a decision issued after the parties filed their briefs in this case, the D.C. Superior

Court in Hackman v. ONE Brands, LLC also adopted the position advocated by Melendez. (See D.E. # 27-1.)

Because a far greater number and variety of district courts have adopted the position advocated by ONE Brands, and because the Court is persuaded by the reasoning found in those decisions, the Court joins those courts that have held that a plaintiff must plead compliance with the FDA's testing methodology in order for his state-law false-advertising claim to escape federal preemption. In particular, this Court is persuaded by the following logic: (1) the FDA has prescribed a specific methodology for determining whether a particular nutrient-content statement made on a label is false; (2) because the FDA has done so, a plaintiff's state-law claim that does not allege compliance with this methodology could be imposing additional or different requirements from those imposed by federal law; therefore, (3) state-law falsity claims that do not allege that this testing methodology was followed are preempted. Accordingly, Melendez's NYGBL claims predicated on the Falsity Theory are preempted.[7]

### C. Melendez's Brand Name Theory Is Preempted

Melendez's Brand Name Theory is also preempted by federal law. The brand name "ONE" refers to the bars' one gram of sugar. (Am. Compl. ¶ 5.) Melendez argues that the use of this brand name is an implied nutrient-content claim, understood by consumers to indicate that the bars are low in sugar. (Pl. Mem. at 6–8.) He argues that because the brand name incorporates an

---

[7] Melendez also alleges that a "third-party certification by the NSF Certified for Sport Program" appears somewhere in relation to the ONE Bars, though it is unclear whether he is alleging that this certification appears on the bars' wrappers or on ONE Brands's website. (Am. Compl. ¶ 10.) Neither party specifically addresses this allegation in its papers, and it appears in only one paragraph of Melendez's FAC. This certification purportedly "assur[es] consumers that what is on the label is in the [ONE Bars], by verif[ying] label claims against product contents... through vigorous laboratory testing." (Id. (internal quotation marks omitted).) The Court accordingly understands this allegation to be a subset of Melendez's allegation that the "1g sugar" statement made on the bars is false. In other words, the Court understands Melendez to allege that, contrary to what is implied by the NSF certification, "what is on the label" is not in fact what is "in the [ONE Bars]." To the extent Melendez's claims are predicated on this NSF certification, they are preempted for the same reasons that his general falsity claims are preempted.

10

implied nutrient-content statement, the FDA prescribes its approval process. (Pl. Mem. at 2, 6–7 (citing 21 C.F.R. § 101.69(b)(3)).)

Melendez is correct that the FDA has enacted regulations governing the approval process for companies seeking to use <u>implied</u> nutrient-content statements in brand names. See 21 C.F.R. § 101.69(b)(3); 21 C.F.R. § 101.13(q)(7). These regulations do not, however, regulate the use of <u>expressed</u> nutrient-content statements in brand names. Using "ONE" to refer to the bars' one gram of sugar is an expressed nutrient-content statement, not an implied one. Compare 21 C.F.R § 101.13(b)(1) (defining an "expressed nutrient content [statement]" as "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories'"), with id. § 101.13(b)(2) (defining an "implied nutrient content [statement]" as one that either: (1) indirectly suggests the amount of nutrient in the food—for example, "high in oat bran," which suggests a high dietary fiber content; or (2) "[s]uggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit . . . statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')").

Because the FDA has not enacted regulations governing the approval process of brand names that incorporate <u>expressed</u> nutrient-content statements, which is what ONE Brands has done here, Melendez's NYGBL claim premised on ONE Brands's brand name would impose state-law requirements that are not imposed by federal law. Melendez's NYGBL claim is therefore preempted to the extent it is premised on the Brand Name Theory.

### III. Failure to State a Claim

The foregoing preemption issues having been resolved, Melendez's remaining claims are for breach of express warranty, breach of implied warranty, unjust enrichment, and violations of

NYGBL §§ 349 and 350 under the Misleading Theory. ONE Brands argues that Melendez fails to state a claim for each. (Def. Mem. at 22–33.) For the reasons that follow, this Court agrees.

### A. New York General Business Law Sections 349 and 350

Section 349 of the NYGBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. Similarly, section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Id. § 350. "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675 (N.Y. 2012)). ONE Brands does not dispute that Melendez has alleged the first element (consumer-oriented conduct), (Def. Mem. at 23 n.9), but contends that he fails to allege the second and third elements (materially misleading conduct and injury, respectively), (id. at 23–29; Tr. 22:9–23:25.)

The Court first considers whether Melendez has alleged materially misleading conduct. To survive a motion to dismiss under NYGBL §§ 349 or 350, a plaintiff must allege statements that were "likely to mislead a reasonable consumer acting reasonably under the circumstances." Davis v. Hain Celestial Grp., Inc, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (internal quotation marks omitted) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745 (N.Y. 1995)) (citing Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013); Bowring v. Sapporo U.S.A., Inc., 234 F.Supp.3d 386, 390 (E.D.N.Y. 2017)). This is an objective inquiry. Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007); see also, Oswego, 647 N.E.2d at 745.

"[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. . . . [T]he presence of a disclaimer or similar clarifying language may defeat a claim of deception." Davis, 297 F. Supp. 3d at 334 (alterations in original) (quoting Fink, 714 F.3d at 742); see also, Belfiore v. Procter & Gamble Co., 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("The entire mosaic is viewed rather than each tile separately." (internal quotation marks omitted)). "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." Davis, 297 F. Supp. 3d at 334. Such clarification can come from an area of the packaging where "consumers are trained to look" for such information, such as the ingredients panel. Id. at 337; see also Solak v. Hain Celestial Grp., Inc., 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, at *5 (N.D.N.Y. Apr. 17, 2018) (holding that consumers can resolve "any potential ambiguity" associated with the product's front label, which emphasizes certain ingredients, "by [looking at] the back panel of the products, which list[s] all ingredients in the order of predominance" (second alteration in original)).

The court's decision in Davis is instructive. 297 F. Supp. 3d at 327. There, a plaintiff brought a claim for deceptive practices and false advertising under NYGBL §§ 349 and 350, alleging that the front label of a product deceptively emphasized certain ingredients. Davis, 297 F. Supp. 3d at 331–33. The court dismissed those claims, explaining that "[a] reasonable consumer acting reasonably under the circumstances would not understand the front label" in the way alleged by the plaintiff. Id. at 337. In particular, the court considered that the ingredients list on the back of the product clarifies any confusion created by the front label as to the predominance of any ingredient, and it did so "in exactly the spot consumers are trained to look." Id. The court concluded that "[n]o reasonable consumer could have been misled in light of this clarifying

language." Id.

Here, the "1g sugar" statement on the ONE Bars' front label is not "likely to mislead a reasonable consumer acting reasonably under the circumstances" into believing that the bars are lower in carbohydrates or calories than they actually are. See id. at 334 (internal quotation marks omitted). Rather, as in Davis, any potential ambiguity created by the front label regarding the bars' carbohydrate and caloric contents is readily clarified by the back panel of the bars' packaging, which lists the amount of carbohydrates and calories in each bar. (See Am. Compl. ¶ 21 (reproducing the nutrition facts panel, which lists the bar's carbohydrate and caloric contents, for the Birthday Cake variety of ONE Bar).) The ONE Bars' carbohydrate and caloric contents are contained in the mandatory nutrition facts panel, (see id.), which is "exactly the spot consumers are trained to look" for such information, Davis, 297 F. Supp. 3d at 337. Because "[n]o reasonable consumer could have been misled" about the bars' carbohydrate and caloric contents "in light of th[e] clarifying language" found on the back panel of the bars' packaging, id., Melendez fails to plead the second element of his NYGBL §§ 349 and 350 claim under the Misleading Theory. The Court need not reach the parties' arguments regarding whether Melendez also fails to allege the third element, injury.

### B. Breach of Express and Implied Warranty Claims

Melendez alleges that ONE Brands breached its express warranty and its implied warranty of merchantability. (Am. Compl. ¶¶ 92–100.) To successfully state a claim for breach of express warranty, "a buyer must provide the seller with timely notice of an alleged breach of warranty." Colella v. Atkins Nutritionals, Inc., 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (internal quotation marks omitted) (quoting Singleton v. Fifth Generation, Inc., 5:15-CV-474 (BKS/TWD), 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016)). Although some New York cases permit an exception

to the notice requirement in retail sales, this exception is applied only where a party alleges physical, in addition to economic, injury. Id. at 144. Moreover, no futility exception exists in New York, to excuse the notice requirement. Id.

Here, the FAC includes no facts showing that notice was provided to ONE Brands, and Melendez failed to respond to ONE Brands's argument that he did not provide notice, either in his papers or at oral argument. Similarly, the FAC does not allege that Melendez sustained a physical injury, and Melendez nowhere suggests that he did in fact sustain such an injury. Accordingly, Melendez fails to state a claim for breach of express warranty because he does not allege he provided notice or that he sustained a physical injury.[8]

Regarding breach of implied warranty, "[t]he law is clear that, absent privity of contract between Plaintiff and Defendant, such [a] claim cannot be sustained as a matter of law except to recover for personal injuries." Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (internal quotation marks omitted) (citing cases). Here, as discussed supra, Melendez does not allege that he sustained a personal injury. He also has not pleaded privity because he does not allege that he purchased a ONE Bar directly from ONE Brands, rather than from a third-party retailer.[9] Accordingly, Melendez fails to state a claim for breach of implied warranty.

---

[8] ONE Brands argues that Melendez's failure to provide notice dooms his implied warranty claim, as well. (See Def. Mem. at 30.) But the cases ONE Brands cites for this proposition did not involve implied warranty claims. (See id. (citing Colella, 348 F. Supp. 3d at 143 (dismissing plaintiff's express warranty claims on failure-to-notify grounds); Singleton, 2016 WL 406295, at *12 (same).)

[9] At oral argument, Melendez's counsel directed the Court's attention to Randy Knitwear, Inc. v. Am. Cyanamid Co., 181 N.E.2d 399 (N.Y. 1962), which he did not cite in his papers but which he asserted stands for the proposition that privity is not required in small consumer transactions. Randy Knitwear, however, preceded the enactment of the Uniform Commercial Code ("UCC"), which displaced it and which does require privity for implied warranty claims. See Ebin v. Kangadis Food Inc., 13-CV-2311 (JSR), 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) (rejecting plaintiff's argument that in New York, privity is not required as a result of the court's decision in Randy Knitwear, and reasoning that the UCC—which does require privity—displaced this decision); see also Weisblum, 88 F. Supp. 3d at 296 (noting that although courts have held that privity is not a requirement for certain express warranty claims under New York law, claims for breach of implied warranty under New York law do require privity, post enactment of the UCC).

## C. Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (internal quotation marks omitted). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Izquierdo v. Mondelez Int'l, Inc., No. 16-cv-04697 (CM), 2016 WL 6459832, at *10 (internal quotation marks omitted) (quoting Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790–91 (2012)). If a plaintiff bases his unjust enrichment claims on the same allegations as his claims for other "conventional contract or tort" claims under New York law, id., and fails to "show[] how [his] unjust enrichment claim differs from" these other claims, the unjust enrichment claim will be considered duplicative, Sitt v. Nature's Bounty, Inc., 2016 WL 6459832, at *18 (E.D.N.Y. Sept. 26, 2016) (collecting cases).

Here, other than the conclusory assertion that ONE Brands obtained "benefits and monies," (Am. Compl. ¶ 106), Melendez neither explains how nor to what extent ONE Brands benefited at Melendez's expense. Nor is it clear why "equity and good conscience" would require restitution in this case. Beth Israel Med. Ctr., 448 F.3d at 586. In short, through his "mere conclusory statements," Melendez fails to state a claim for relief under his unjust enrichment theory.

Moreover, Melendez's unjust enrichment claim is duplicative of his other tort claims, thereby affording an additional ground for dismissal. Indeed, Melendez's FAC includes only one sentence unique to his unjust enrichment claim: "Defendant obtained benefits and monies because the [ONE Bars] were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained

## C. Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (internal quotation marks omitted). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Izquierdo v. Mondelez Int'l, Inc., No. 16-cv-04697 (CM), 2016 WL 6459832, at *10 (internal quotation marks omitted) (quoting Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790–91 (2012)). If a plaintiff bases his unjust enrichment claims on the same allegations as his claims for other "conventional contract or tort" claims under New York law, id., and fails to "show[] how [his] unjust enrichment claim differs from" these other claims, the unjust enrichment claim will be considered duplicative, Sitt v. Nature's Bounty, Inc., 2016 WL 6459832, at *18 (E.D.N.Y. Sept. 26, 2016) (collecting cases).

Here, other than the conclusory assertion that ONE Brands obtained "benefits and monies," (Am. Compl. ¶ 106), Melendez neither explains how nor to what extent ONE Brands benefited at Melendez's expense. Nor is it clear why "equity and good conscience" would require restitution in this case. Beth Israel Med. Ctr., 448 F.3d at 586. In short, through his "mere conclusory statements," Melendez fails to state a claim for relief under his unjust enrichment theory.

Moreover, Melendez's unjust enrichment claim is duplicative of his other tort claims, thereby affording an additional ground for dismissal. Indeed, Melendez's FAC includes only one sentence unique to his unjust enrichment claim: "Defendant obtained benefits and monies because the [ONE Bars] were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained

profits." (Am. Compl. ¶ 106.) Because Melendez's unjust enrichment claim is based on the same allegations as his other claims, and because Melendez has not shown how it differs from these other claims, his unjust enrichment claim is duplicative and must therefore be dismissed.

**IV.  Leave to Amend**

Melendez requests that, should the Court be inclined to dismiss any of his claims, the Court should grant him leave to amend his FAC or dismiss his claims without prejudice. (Pl. Opp'n at 13.) ONE Brands opposes this request. (Def. Mem. at 2, 33–34; see also Def. Reply at 12.)

Although "a party may amend its pleading only with the opposing party's written consent or the court's leave" after the expiration of time for amendment as a matter of course, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) ("Generally, leave to amend should be freely given . . . ." (internal quotation marks omitted)). "[T]he 'permissive standard' of Rule 15 is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015) (internal quotation marks omitted). The Second Circuit has also observed that "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." Id. at 190. Here, although Melendez has amended his complaint once, he has not had an opportunity to do so in response to a court order evaluating the sufficiency of his allegations. Nonetheless, the Court denies Melendez leave to amend his FAC, as granting him such leave would be futile.

Melendez's Falsity and Brand Name theories of his NYGBL claim are preempted by federal law. Therefore, granting Melendez leave to amend the FAC with respect to these theories would be futile. See, e.g., Poretsky v. Hirise Eng'g, P.C., No 15-CV-4012 (JFB) (AYS), 2016 WL

5678880, at *1 (E.D.N.Y. Sept. 30, 2016) (denying leave to amend because preemption made amendment futile); Semper v. New York Methodist Hosp., 786 F. Supp. 2d 566, 582 (E.D.N.Y. 2011) (same).

Melendez's failure to plead materially misleading conduct with respect to his Misleading Theory also could not be cured by granting him leave to amend. Specifically, as discussed above, no reasonable consumer could have been misled about the bars' carbohydrate or caloric contents in light of the clarifying language found on the back panel of the bars' packaging. Similarly, Melendez would be unable to state a claim for breach of express warranty, even if given leave to amend, because he cannot allege that he provided notice that, by all indications, he did not in fact provide, nor allege that he sustained a physical injury that, by all indications, he did not in fact sustain. And regarding his claim for breach of implied warranty, Melendez would be unable to amend his FAC to allege privity, an essential element, given that his counsel confirmed at oral argument that he purchased ONE Bar(s) from a third-party retailer, rather than directly from ONE Brands through its website. (Tr. 10:18–25.) Finally, an unjust enrichment claim is unavailable where it "duplicates, or replaces, a conventional . . . tort claim," Izquierdo, 2016 WL 6459832, at *10 (internal quotation marks omitted), as Melendez's unjust enrichment claim does here. In sum, granting Melendez leave to amend would be futile with respect to all of his claims and his request for the same is accordingly denied.

## CONCLUSION

For the reasons explained above, ONE Brands's motion to dismiss Melendez's FAC is granted in its entirety and Melendez's FAC is dismissed without leave to amend. The Clerk of

18

Court is respectfully directed to close this case.

SO ORDERED.

Dated: March 16, 2020
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge